**UNITED STATES of America**

v.

**Kenneth E. MAHAFFY, Jr., Timothy J. O'Connell, David G. Ghysels, Jr., Robert F. Malin, Linus Nwaigwe, Michael A. Picone, and Keevin H. Leonard, Defendants.**

**No. 05–CR–613.**

United States District Court,
E.D. New York.

Aug. 13, 2007.

Michael Anthony Asaro, United States Attorneys Office, Eastern District of New York, Brooklyn, NY, for Plaintiff.

Richard F. Albert, Morvillo, Abramowitz, Grand, Iason & Silberberg PC, Jeffrey C. Hoffman, Hoffman Pollok LLP, J. Bruce Maffeo, Elizabeth Nicole Warin, Law Offices of J. Bruce Maffeo, David Bernfeld, Thomas F.X. Dunn, New York City, Stephen P. Scaring, Stephen P. Scaring, P.C., Garden City, NY, Mildred M. Whalen, Federal Defenders of New York, Inc., Brooklyn, NY, for Defendants.

## MEMORANDUM & ORDER RULE 29, DOUBLE JEOPARDY, & CRIMINAL COLLATERAL ESTOPPEL

WEINSTEIN, Senior District Judge.

### I. Introduction

Seven defendants were charged in a 41 count indictment with a "front running" securities operation involving the sharing of allegedly confidential proprietary information by stockbrokers with day traders. The information is alleged to have given the traders an insider's advantage over the market. The scheme is detailed in *U.S. v. Mahaffy*, No. 05–CR–613, 2006 WL 2224518 (E.D.N.Y. Aug. 2, 2006). After a seven-week trial before another judge of this court and a jury, acquittals were obtained by defendants Mahaffy, Ghysels, Malin, Nwaige, Piccone, and Leonard on all counts, with the exception of Conspiracy to Commit Securities Fraud (Count 1). Defendant O'Connell was convicted of False Statements (Count 36) and Witness Tampering (Count 35).

As to each defendant, the jury was unable to reach a unanimous verdict on Count 1. The government intends to retry each defendant on that conspiracy count. Motions by defendants to prevent a retrial are denied for reasons stated below.

### II. Charge

Count 1 charges as follows:

In or about and between August 2002 and February 2004, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants KENNETH E. MAHAFFY, JR., TIMOTHY J. O'CONNELL, DAVID G. GHYSELS, JR., ROBERT F. MALIN, LINUS NWAIGE, MICHAEL A PICONE and KEEVIN H. LEONARD, together with others, did knowingly and intentionally conspire to execute a scheme and artifice (a) to defraud persons in connection with securities of issuers with a class of securities registered under Section 12 of the Securities Exchange Act of 1934, to wit: shares of public companies for which customers of the Brokerage Firms placed orders to buy and sell, and (b) to obtain, by means of materially false and fraudulent pretenses, representations and promises, money and property in connection with the purchase and sale of securities of issuers with a class of securities registered under Section 12 of the Securities Exchange Act of 1934, to wit: shares of public companies for which customers of the Brokerage Firms placed orders to buy and sell, all in violation of Title 18, United States Code, Section 1348. (Title 18, United States Code, Sections 1349 and 3551 *et seq.*)

The securities fraud alleged to be the object of the charged conspiracy involved the proposed misappropriation of confidential and proprietary information transmitted over brokerage houses' squawk boxes (internal loudspeakers that announce forthcoming large trades, among other information). All defendants argue, in various ways, that no evidence was adduced at trial supporting the contentions that they knew that the information transmitted over squawk boxes was confidential and proprietary, or that they knew it was communicated to the traders in violation of the brokerage houses' internal policies. *See, e.g.,* Malin Br. at 5 ("there was [not] a jot of evidence to show that Malin had any reason to know or believe that the broker-defendants were violating their respective firms' policies by transmitting the information at issue to AB Watley in the manner described at trial"); Mahaffy Br. at 26 ("[T]here was simply no competent evidence that the Defendant's conduct violated any policy or procedure in place at either Merrill Lynch or Smith Barney.... In the absence of such proof, the Government's assertion that the broker defendants conspired to deprive their employers of 'confidential business information' or the right to honest services-[sic] must fail."); Nwaigwe Br. at 12 ("There is nothing in the record from which it can be inferred that Nwaigwe: (1) knew or had reason to believe that the broker-dealers were violating some internal policy; (2) knew or had reason to know that the information was proprietary and confidential; (3) knew of the bribes-wash trades or cash payments. Thus, missing is the element of knowledge, essential for a conviction on Count One.").

The trial judge had instructed the jury that in order to convict any defendant of conspiracy to commit securities fraud under this count, they must find that the government proved the following elements of 18 U.S.C. § 1349 beyond a reasonable doubt:

> *First:* that the conspiracy existed; and
>
> *Second:* that the defendant knowingly and intentionally became a member of that conspiracy.

Expanding upon the second element, the court stated: "The key inquiry is simply whether the defendant joined the conspiracy with an awareness that its basic aim and purpose was to commit securities fraud, and with the intent to help it succeed in achieving that criminal objective."

Each of the securities fraud counts involved particular sales or purchases of securities. Five of the seven defendants had been charged with-and were acquitted of-the substantive crime of securities fraud under 18 U.S.C. § 1348: Ghysels (Counts 2, 3, 4, 6, and 7); Leonard (Counts 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16); Mahaffy (Counts 5, 8, and 9); Malin (Counts 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16); and O'Connell (Counts 5, 8, 9, 10, 12, 13, 14, 17, 18, 19, 20, 21).

## III. Rule 29 Motions

■ After trial each defendant moved pursuant to subdivision (c) of Federal Rule of Criminal Procedure 29 for a judgment of acquittal on the charge of conspiracy to commit securities fraud. To succeed, any Rule 29 motion must demonstrate that, "viewing the evidence in the light most favorable to the government, no rational trier could have found the essential elements of the crime charged beyond a reasonable doubt." *United States v. Leslie,* 103 F.3d 1093, 1100 (2d. Cir.1997) (quotation marks and citation omitted).

Defendants had first moved for a judgment of acquittal under subdivision (a) of Rule 29 after the close of the government's case. That motion was denied without reservation of decision. *See* Tr. at 4035–37

("I'm going to decide the Rule 29 motion now. I'm going to deny it, all of them.... If [the trial judge] concludes that either of the two results, a reasonable doubt or no reasonable doubt, is fairly possible, he must let the jury decide the matter, and I think that's exquisitely applicable to what I had before me.").

■ "To sustain a conspiracy conviction, the government must present some evidence from which it reasonably can be inferred that the person charged with conspiracy knew of the existence of the scheme alleged in the indictment and knowingly joined and participated in it." *United States v. Rodriguez*, 392 F.3d 539 (2d Cir.2004). Conspiracy requires a specific intent. To establish guilt the government must prove that the defendant knew of the existence of the scheme to commit the specific crime charged in the indictment. *United States v. Morgan*, 385 F.3d 196, 206 (2d Cir.2004). "Proof that the defendant knew that *some* crime would be committed is not enough." *United States v. Friedman*, 300 F.3d 111, 124 (2d Cir. 2002).

■ The government offered no direct proof of the defendants' knowledge that information disseminated over the squawk boxes was confidential and proprietary, or that it was being shared with the traders at another firm in violation of the originating brokerage houses' internal policies. Circumstantial evidence may suffice. *Rodriguez*, 392 F.3d at 544; *United States v. Glenn*, 312 F.3d 58, 64 (2d Cir.2002). "In fact, the government is entitled to prove its case solely through circumstantial evidence, provided, of course, that the government still demonstrates each element of the charged offense beyond a reasonable doubt." *Rodriguez*, 392 F.3d at 544.

■ Sufficient proof was presented at trial from which a rational juror could infer that each defendant—experienced in securities brokerage practice—knew the information on the squawk boxes was confidential, proprietary, and being disseminated to outsiders in contravention of company policy. The evidence included: secrecy with which the squawk box transmissions were shared; payment of cash in exchange for squawk box access; and the internal policy manuals of Merrill Lynch and Citigroup. A rational juror could infer that each defendant was aware that sharing access to squawk boxes with outsiders amounted to a misappropriation of confidential, proprietary information in violation of company policy.

The jury's verdicts of acquittal on counts 2 through 41 are not dispositive in evaluating the sufficiency of the evidence on Count 1. Rule 29(a), which describes the test to be applied by the court in determining whether to grant a motion for a judgment of acquittal under Rules 29(a), (b), and (c), requires the court to "enter a judgment of acquittal of any offense for which *the evidence* is insufficient to sustain a conviction." Fed.R.Crim.P. 29(a) (emphasis added). Analysis is focused on the evidence which had been adduced at the trial. Consideration of the jury's verdicts on counts otherwise disposed of is not evidence contemplated by a post-verdict subdivision (c) motion.

■ Whatever the double jeopardy or collateral estoppel effects of the jury's verdicts of acquittal may be, *see infra* Part IV, they would apply only to a subsequent trial. "[A] jury's determination on one count in an indictment has no estoppel effect on its determination on other counts at the same trial." *United States v. Zane*, 495 F.2d 683, 689–90 (2d Cir.1974). Inconsistent verdicts are recognized as within a jury's prerogative. *See, e.g., Dunn v. United States*, 284 U.S. 390, 391, 52 S.Ct. 189, 76 L.Ed. 356 (1932) ("Consistency in

the verdict is not necessary. Each count in an indictment is regarded as if it was a separate indictment.").

Viewing the evidence in the light most favorable to the government, a rational trier could have found the operative elements of Count 1, conspiracy to commit securities fraud, proven beyond a reasonable doubt. Defendants' motions for judgments of acquittal under Rule 29(c) are denied.

## IV. Double Jeopardy and Collateral Estoppel

### A. Generally

 Defendants move, under a theory of collateral estoppel, to bar the government from introducing evidence of conduct underlying the charges of which they were acquitted at any retrial of Count 1. "[T]he doctrine of collateral estoppel is a basic and essential part of the Constitution's prohibition against double jeopardy." *Ashe v. Swenson*, 397 U.S. 436, 448, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970); *see also Dowling v. United States*, 493 U.S. 342, 347, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990) ("the Double Jeopardy Clause incorporates the doctrine of collateral estoppel"); U.S. Const. amend. V ("nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb").

 Through collateral estoppel, "the Government is precluded from relitigating an issue decided in defendant's favor by a valid final judgment." *United States v. Mespoulede*, 597 F.2d 329, 332 (2d Cir.1979). Application of this principle involves a two-part analysis: first, the court must determine what precisely the first judgment decided. Second, the court must decide how that decision bears on the second case. *Id.; United States v. Jackson*, 778 F.2d 933, 938–39 (2d Cir.1985).

The difficulty of applying collateral estoppel in criminal cases lies primarily in the first step of the inquiry. "[I]t usually cannot be determined with any certainty upon what basis the previous jury reached its general verdict." *United States v. Gugliaro*, 501 F.2d 68, 70 (2d Cir.1974); *see also Mespoulede*, 597 F.2d at 333 ("the ground of acquittal cannot generally be ascertained."); *United States v. Tramunti*, 500 F.2d 1334, 1346 (2d Cir.1974) ("Since it is usually impossible to determine with any precision upon what basis the jury reached a verdict in a criminal case, it is a rare situation in which the collateral estoppel defense will be available to a defendant."). Courts have long been reluctant to intrude upon "the sanctity of the jury's deliberations" because of their "strong policy against probing into [a jury verdict's] logic or reasoning, which would open the door to interminable speculation." *United States v. Zane*, 495 F.2d 683, 690 (2d Cir.1974).

 Each defendant bears the burden of demonstrating "that the issue whose relitigation he seeks to foreclose was actually decided in the first proceeding." *Dowling*, 493 U.S. at 350, 110 S.Ct. 668; *see also United States v. Citron*, 853 F.2d 1055, 1058 (2d Cir.1988). It is unusual for a defendant to be able to meet this burden. *See United States v. Cala*, 521 F.2d 605, 609 (2d Cir.1975) ("it is a rare case where a defendant can sustain his burden of establishing that the prior jury necessarily decided an essential issue in his favor"). This is not one of those singular cases.

"In determining what issues were necessarily resolved by prior proceedings, the court is to take a practical approach, examining the record, pleadings, evidence and jury instructions in order to decide whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration." *Id.* at 608 (quotation

marks and citation omitted). That analysis reveals in this case the impossibility of divining with any accuracy the precise findings of the jury as to each element of the charges of which defendants were acquitted.

### B. Analysis of Each Defendant's Claim

#### 1) Michael Picone

Picone was acquitted of Conspiracy to Violate the Travel Act in violation of 18 U.S.C. § 1952(a)(3) (Count 22) and False Statements in violation of 18 U.S.C. §§ 1001(a) and (b) (Count 41). The gravamen of the Travel Act charged was an alleged conspiracy to promote or facilitate the violation of New York Penal Law § 180.05, Commercial Bribe Receiving in the Second Degree. The indictment listed 16 overt acts in Count 22. The court instructed the jury that this count contained three elements:

1. A conspiracy existed.

2. The defendant knowingly and intentionally became a member of the conspiracy.

3. At least one of the overt acts was committed or caused to be committed by a conspirator during the course of and for the purpose of furthering the objectives of the conspiracy.

The elements of N.Y. Penal Law § 180.05, Commercial Bribe Receiving, were explained to the jury as follows:

First: that an employee, agent or fiduciary solicited, accepted or agreed to accept some form of benefit from another person;

Second: that such person solicited, accepted, or agreed to accept the benefit with the understanding that it would influence his conduct in relations to his employer's or principal's affairs; and

Third: that such person engaged in this conduct without obtaining his employer's or principal's consent.

■ The jury could have based its verdict of acquittal on reasonable doubt as to any of the elements listed. There is no basis for the conclusion that Picone draws from his acquittal on this count: "by acquitting Picone of the conspiracy to promote commercial bribe receiving, the jury necessarily found reasonable doubt that Picone had the requisite intent." Picone Br. at 10. "Although further examples of conjecture as to the jury's mental gymnastics are possible, the danger inherent in such endless surmise, absent a set of specific and detailed findings of fact, is readily apparent." *United States v. Zane*, 495 F.2d 683, 691 (2d Cir.1974). Picone has failed to meet his burden of demonstrating that the issue whose relitigation he wishes to foreclose—intent to enter a conspiracy to commit securities fraud—was decided in his favor at the first trial.

The second count of which Picone was acquitted, False Statements, alleged that Picone lied to the Securities and Exchange Commission ("SEC") about what he believed to be the purpose of a $1,000 payment to a trader. The government does not contest that the jury necessarily decided that Picone's statement to the SEC was not materially false. They argue instead that they should be allowed to introduce evidence at the retrial that Picone made a materially false statement in a conspiracy to commit securities fraud because the new jury would not have to conclude beyond a reasonable doubt that Picone made a materially false statement in order to convict him of securities fraud.

The admissibility of evidence that Picone's statement to the SEC was false is best decided on a motion *in limine* before the retrial. In *Dowling v. United States*, the Supreme Court held that evidence of

conduct for which a defendant had previously been acquitted was admissible at a subsequent trial under Rule 404(b). 493 U.S. 342, 349–49, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990). "The primary ruling of [*Dowling* ] was [the] conclusion that the collateral-estoppel component of the Double Jeopardy Clause offered Dowling no protection despite his earlier acquittal, because the relevance of evidence offered Rule 404(b) was governed by a lower standard of proof [i.e., preponderance of the evidence] than that required for a conviction [i.e., beyond a reasonable doubt]." *United States v. Felix,* 503 U.S. 378, 386, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992). Should evidence of Picone's statement to the SEC be offered as direct evidence of an element of the crime of conspiracy for which he will be retried, the court will evaluate its admissibility under the Double Jeopardy clause in the context of all the proof to be offered by the government of that element.

### 2) *Robert Malin*

██ Malin was acquitted of securities fraud (Counts 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16) and Conspiracy to Violate the Travel Act (Count 22). He argues that the government is collaterally estopped from presenting at a retrial on Count 1 "any proof against Malin relating to the allegation that he participated in a conspiracy to bribe defendants Mahaffey [sic], O'Connell and Ghysels ('the broker-defendants') . . ." Malin Br. at 2. The elements of Conspiracy to Violate the Travel Act as they were charged to the jury are described in Part IV.B.1, *supra.*

Malin's primary argument to the jury on Count 22 was that if any bribes were being paid to the broker-defendants for squawk box access, he was unaware of the fact that the payments were in fact bribes. It does not automatically follow that the jury, by acquitting him of this charge, necessarily found that he lacked knowledge that any of the payments made were bribes. As noted in Part IV.B.1, *supra,* the jury's verdict could have been based on a finding that any one of the several elements of the charged crime were not proven. Since "it is . . . impossible to determine with any precision upon what basis the jury reached [its] verdict . . . the collateral estoppel defense [is not] available to" Malin. *United States v. Tramunti,* 500 F.2d 1334, 1346 (2d Cir.1974).

### 3) *Timothy O'Connell*

O'Connell was acquitted of Securities Fraud (Counts 5, 8, 9, 10, 12, 13, 14, 17, 18, 19, 20, 21), Conspiracy to Violate the Travel Act (Count 22), Travel Act Violations (Count 25, 27, 28, 29, 30, 31), and Conspiracy to Commit Witness Tampering (Count 34). He was convicted of Witness Tampering (Count 35) and False Statements (Count 36). O'Connell argues that his acquittal on the Travel Act conspiracy and substantive counts precludes the government from arguing at retrial "that the commissions Mr. O'Connell received were bribes in return for the squawk box information." O'Connell Br. at 9.

The elements of Conspiracy to Violate the Travel Act as they were charged to the jury are described in Part IV.B.1, *supra.* Since it is impossible to determine with precision which of the elements the jury found not proven beyond a reasonable doubt, O'Connell has not met his burden of establishing that the issue he wishes to preclude relitigation of was necessarily decided by the first jury. *See Dowling,* 493 U.S. at 350, 110 S.Ct. 668; *see also United States v. Citron,* 853 F.2d 1055, 1058 (2d Cir.1988).

The jury charge describes the element of Travel Act Violations as follows:

*First:* that the defendant himself used or caused someone else to use an interstate facility or the mail;

*Second:* that this use of an interstate facility or the mail was done with the intent to promote, manage, establish or carry on the unlawful activity, that is, Commercial Bribery in violation of New York law; and

*Third:* that after this use of the mail or an interstate facility the defendant performed or attempted to perform an act in furtherance of this same unlawful activity.

The elements of N.Y. Penal Law § 180.05, Commercial Bribery, are described in Part IV.B.1, *supra.* It is impossible to determine which of the elements of the Travel Act or N.Y. Penal Law § 180.05 the jury determined had not been proven beyond a reasonable doubt. O'Connell cannot demonstrate that the issue he wishes to preclude was necessarily decided in his favor by the jury, and therefore his collateral estoppel claim fails.

### 4) *Kenneth Mahaffy*

Mahaffy was acquitted of Securities Fraud (Counts 5, 8, and 9), Conspiracy to Violate the Travel Act (Count 22), Travel Act Violations (Counts 23, 25, 27, 28, 32, and 33), and False Statements (Counts 37 and 38).

The analysis of the preclusive effect of Mahaffy's acquittals on the Travel Act counts is identical to the analysis of O'Connell's acquittals on those same counts. *See* Part IV.B.4, *supra.*

The jury was charged as to the elements of False Statements as follows:

First, that on or about the date specified, the defendant made a statement or representation;

Second, that this statement or representation was material;

Third, the statement or representation was false, fictitious or fraudulent;

Fourth, the false, fictitious or fraudulent statement was made knowingly and willfully; and

Fifth, the statement or representation was made in a matter within the jurisdiction of the government of the United States.

Unlike Picone, *see supra* Part IV.B.1, Mahaffy did not concede each of the foregoing elements with the exception of falsity. Rather, Mahaffy testified that he could not recall making certain portions of the charged statements to the government at all. *See, e.g.,* Tr. at 4180 ("Q: . . . . The question again is did you say to the government during the proffer that you would keep your phone line at Smith Barney on mute for lengthy parts of the day, not just parts [sic] the day? A: I cannot answer that with a yes or no because I don't remember saying for large portions of the day. I remember saying for parts of the day."). It is impossible to determine with precision the basis on which the jury acquitted Mahaffy of the false statements count. Mahaffy's acquittal of this charge cannot be given collateral estoppel effect.

### 5) *David Ghysels*

Ghysels was acquitted of Securities Fraud (Counts 2, 3, 4, 6, and 7), Conspiracy to Violate the Travel Act (Count 22), and Travel Act Violations (Counts 24 and 26). For the reasons described in Part IV.B.3, *supra,* Ghysels has not met his burden of demonstrating that the issues he wishes to preclude were necessarily decided in his favor by the jury, and therefore his collateral estoppel claim fails.

### 6) *Linus Nwaigwe*

Linus Nwaigwe was acquitted of False Statements (Count 39). The elements of

that count, as charged to the jury, are described in Part IV.B.4, *supra.* Nwaigwe contested several of those elements at trial: he argued to the jury that his statements were truthful; that even if untruthful, they were made on the advice of an attorney; and that even if untruthful, they were immaterial. It is impossible to determine which element the jury found to lack proof beyond a reasonable doubt. Nwaigwe has not met his burden of demonstrating that the issue he wishes to preclude was necessarily decided in his favor by the jury, and therefore his collateral estoppel claim fails.

## V. Conclusion

The defendants' Rule 29, Double Jeopardy, and collateral estoppel motions are denied.

SO ORDERED.